553 F.2d 571
 UNITED STATES of America, Appellee,
v.
255.25 ACRES OF LAND, MORE OR LESS, situate IN MONROE
COUNTY, STATE OF MISSOURI, et al., Appellants (two cases).
UNITED STATES of America, Appellee,
v.
468.93 ACRES OF LAND, MORE OR LESS, situate IN MONROE
COUNTY, STATE OF MISSOURI, et al., Appellants.
UNITED STATES of America, Appellee,
v.
371.93 ACRES OF LAND, MORE OR LESS, situate IN MONROE
COUNTY, STATE OF MISSOURI, et al., Appellants.
 Nos. 76-1645 to 76-1648.
 United States Court of Appeals,
Eighth Circuit.
 Submitted Feb. 17, 1977.
Decided April 20, 1977.
 
 Samuel C. Ebling, St. Louis, Mo., for appellants; Gregory F. Hoffmann, St. Louis, Mo., on brief.
 Edward J. Shawaker, Land & Natural Resources Division, Appellate Section, Dept. of Justice, Washington, D. C., for appellee; Peter R. Taft and Raymond N. Zagone, Washington, D. C., on brief.
 Before GIBSON, Chief Judge, CLARK, Associate Justice,* and HEANEY, Circuit Judge.
 PER CURIAM.
 
 
 1
 These consolidated appeals arose out of condemnation proceedings instituted by the Secretary of the Army for acquisition of lands in connection with the Clarence Cannon Dam Reservoir Project, which was authorized by Congress on October 23, 1962, Pub.L. No. 87-874, 76 Stat. 1173 (1962), in accordance with the recommendation of the Chief of Engineers in H.R.Doc.No. 507, 87th Cong., 2d Sess. (1962).
 
 
 2
 The landowners raised certain defenses to the taking of their property, including the fact that those portions of their property that were located above the 621-foot meander level were being taken without statutory authority; and that the Government had failed to comply with certain provisions of the Uniform Relocation Assistance and Real Property Acquisition Act, 42 U.S.C. § 4630, the Federal Water Pollution Control Act, 33 U.S.C. § 1153, and the Clean Air Act, 42 U.S.C. § 1857.[1]
 
 
 3
 On the merits, the Government admits that the authorizing Act of the Congress on the Cannon Project adopted elevation 621 as the upper limit for acquisition in fee for reservoir operational purposes, but also provided for flowage easements over the remaining lands within the reservoir area between the fee-taking line of elevation 621, and elevation 641.0, three feet above the top of the flood control pool. The Government also points to the fact that the Act authorizes the Cannon Project to be built "substantially in accordance with the recommendations of the Chief Engineers in House Document 507." This language was obviously taken from the written recommendation that the Board of Engineers made to the Congress requesting authorization of the Cannon project which provided that it be built "generally in accordance with the plans of the District Engineer and with such modifications thereof as in the discretion of the Chief of Engineers may be advisable." H.R.Doc.No. 507, 87th Cong., 2d Sess. 7 (1962). Finally, the District Engineer recommended the project "generally in accordance with plans outlined herein." Id. at 63. Some of the circuits have construed this language as being quite sufficient to allow "such modifications as later studies indicate are necessary. Allison v. Froehlke, 470 F.2d 1123, 1126 (5th Cir. 1972). Indeed, this circuit itself has recognized that the building of dams involves a revision of the original plans as the building process develops. United States v. Crance, 341 F.2d 161 (8th Cir.), cert. denied, 382 U.S. 815, 86 S.Ct. 36, 15 L.Ed.2d 63 (1965).
 
 
 4
 Here, however, it appears that Document 507 specifically permits the taking of the fee above elevation 621 on some 4800 acres at the least; it appears that if the fee were required on the 15,100 acres remaining, it would come "substantially" or "generally" within the plans outlined in the authorization. It might be the better practice for the district court to have a hearing on the matter and determine if the fee lands now determined to be necessary for the Cannon project reasonably come within the language of the grant. Since the case is to be heard with regard to damages, the trial court on remand could have such a hearing and determine the matter prior to the setting of value on the property taken.[2]
 
 
 5
 It is so ordered.
 
 
 
 *
 Associate Justice TOM C. CLARK, United States Supreme Court (Ret.) sitting by designation
 
 
 [1]
 The Government argues initially that there is no final judgment, citing Catlin v. United States, 324 U.S. 229, 233, 65 S.Ct. 631, 633-634, 89 L.Ed. 911 (1945), holding that "in condemnation proceedings appellate review may be had only upon an order or judgment disposing of the whole case . . . ". However, where the ruling involved is fundamental to the future conduct of the case, United States v. 58.16 Acres of Land, 478 F.2d 1055 (7th Cir. 1973), appeal is permissible
 
 
 [2]
 The landowners' complaint as to the Secretary's noncompliance with NEPA and other environmental statutes has no merit. It has been held again and again that the "only question for judicial review in a condemnation proceeding is whether the purpose for which the property (is) taken is for a . . . congressionally authorized use." United States v. 416.81 Acres of Land, 514 F.2d 627, 631-32 (7th Cir. 1975). Moreover, the landowners here made no allegations of harm to the environment, have alleged no interest in the environment and have made no claim as to being within the zone of interests protected by NEPA; nor do they allege any injury to themselves within the scope of NEPA or the other Acts