**UNITED STATES of America,**
**Plaintiff–Appellant,**

v.

**0.95 ACRES OF LAND et al.,**
**Defendants–Appellees.**

**UNITED STATES of America,**
**Plaintiff–Appellant,**

v.

**12.84 ACRES OF LAND et al.,**
**Defendants–Appellees.**

Nos. 91–35922, 91–35923.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted May 7, 1993.

Decided June 1, 1993.

As Amended July 8, 1993.

---

Ellen J. Durkee, Environment & Natural Resources Div., U.S. Dept. of Justice, Washington, DC, for plaintiff-appellant.

Constance E. Brooks, Denver, CO, for defendants-appellees.

Before: SKOPIL, ALARCON and BEEZER, Circuit Judges.

BEEZER, Circuit Judge:

This case presents us with a question of jurisdiction disguised as an environmental claim. The United States Forest Service commenced two takings actions in federal district court. To prevent the taking of their land, landowners invoked the National Environmental Policy Act, 42 U.S.C. § 4321 *et seq.* ("NEPA"), as a defense to condemnation. The landowners claimed that the change in land title was a major federal action requiring full NEPA compliance. The district court agreed and vacated the declarations of taking. The Forest Service appeals; we reinstate title in the government.

I

The Tenday Timber Sale sits within the Snoqualmie National Forest, administered as part of the Wenatchee National Forest near Yakima, Washington. The Tenday Timber Sale had been evaluated in a 1986 Environmental Assessment ("EA") prepared under NEPA. The EA ended in a Finding of No Significant Impact, a finding that meant no Environmental Impact Statement ("EIS") was required for the timber sale.

The United States Forest Service advertised and sold the Tenday Timber Sale to the Hakai Timber Company. Award of the contract was delayed until the Forest Service acquired access. In this area, sections of National Forest land are interspersed in a checkerboard pattern with sections of private land.

The Herke family owns five land sections adjacent to the Wenatchee National Forest. The Herkes use the land to graze cattle and have contracted to have the land logged by selective harvest over the last thirty years. As a result of the logging operations, a road system already exists on the Herke land.

The Forest Service has used this road system in the past for fire patrols, wilderness patrols, timber cruising, surveys, and fire suppression. The general public also uses the roads and trails on the Herke land for hunting, fishing, and other recreation. The Herkes claim that they only wish to control motorized vehicle access to their land.

In April 1988, the Forest Service approached the Herkes with an appraisal and offer to buy the land for a new road system to access the recent Tenday Timber Sale. Negotiations were fruitless. The Herkes believed the existing road system should be used and offered access and easement options to the Forest Service. The Forest Service rejected the proposals. In the fall of 1990, the Herkes entered into an agreement with Hakai Timber to use the existing roads to access the area. The Forest Service initially gave oral approval of the agreement but later rescinded it.

On March 22, 1990, the Forest Service filed declarations of taking in the district court. Shortly thereafter, it filed complaints in condemnation and demands for jury trial, motions for orders for delivery of possession, and motions and orders directing deposit of funds into interest bearing accounts. District Judge Quackenbush issued the orders of possession to the Forest Service. The Herkes filed an answer, counterclaim, and affirmative defenses. On May 22, 1991, District Judge McDonald vacated the declarations of taking and the orders of possession. The Forest Service moved for reconsideration; Judge McDonald denied the motion for

reconsideration in *United States v. 0.95 Acres*, 765 F.Supp. 1045 (E.D.Wash.1991). The Forest Service appeals the order vacating the declarations of taking and orders of possession.

## II

The issue of whether noncompliance with NEPA can be a valid defense to a declaration of taking is one of statutory construction reviewed *de novo*. *United States v. McConney*, 728 F.2d 1195, 1201 (9th Cir.) (*en banc*), *cert. denied*, 469 U.S. 824, 105 S.Ct. 101, 83 L.Ed.2d 46 (1984).

### A. *Federal Law of Eminent Domain*

■ Eminent domain is the power of the sovereign to take private property for public use without the owner's consent. The power of eminent domain is an attribute of sovereignty, limited by the just compensation clause of the Fifth Amendment.

■ In this type of condemnation proceeding, the United States files a declaration of taking in the district court pursuant to the Declaration of Taking Act, 40 U.S.C. § 258a et seq., and deposits funds with the district court. The district court may then enter an *ex parte* order of possession. At approximately the same time, the United States files a complaint and demand for jury trial to determine the proper amount of compensation. The private property owner may now answer. The decision of the trial court that the United States has the right to possession of the property under a declaration of taking is not a final, appealable decision. *Catlin v. United States*, 324 U.S. 229, 232, 65 S.Ct. 631, 633, 89 L.Ed. 911 (1945). *See* 40 U.S.C. § 258a.

"The only question for judicial review in a condemnation proceeding is whether the purpose for which the property was taken is for a Congressionally authorized public use." *United States v. 416.18 Acres of Land*, 514 F.2d 627, 631 (7th Cir.1975). *See also Berman v. Parker*, 348 U.S. 26, 32–33, 75 S.Ct. 98, 102–03, 99 L.Ed. 27 (1954); *United States ex rel. TVA v. Welch*, 327 U.S. 546, 552, 66 S.Ct. 715, 718, 90 L.Ed. 843 (1946). No one challenges the authority to take cited in the Forest Service's declarations of taking. The challenge alleges that failure to comply with NEPA voids the condemnation.

### B. *National Environmental Policy Act*

NEPA requires all Federal agencies to prepare an EIS for all "major Federal actions significantly affecting the quality of the human environment." 42 U.S.C. § 4332(2)(C).

Other circuits have held that lack of compliance with NEPA cannot be a defense in a condemnation action. "The landowners' complaint as to the Secretary's noncompliance with NEPA and other environmental statutes has no merit." *United States v. 255.25 Acres of Land*, 553 F.2d 571, 572 n. 2 (8th Cir.1977). The Fourth Circuit also held that the government could exercise its right of eminent domain despite failure to file a NEPA EIS. *United States v. 178.15 Acres of Land*, 543 F.2d 1391, 1391 (4th Cir.1976).

In *United States v. 162.20 Acres of Land*, 639 F.2d 299 (5th Cir.), *cert. denied*, 454 U.S. 828, 102 S.Ct. 120, 70 L.Ed.2d 103 (1981), the court disallowed a defense to a condemnation based on the agency's alleged noncompliance with the National Historic Preservation Act, 16 U.S.C. § 470 *et seq.* ("NHPA"). NHPA is similar to NEPA except that it requires consideration of historic sites, rather than the environment. The Fifth Circuit concluded:

> The filing of a declaration, by which title vests, is a neutral act vis-a-vis NHPA compliance procedures and the policy concerns behind them. Federal agencies are compelled to abide by the terms of the NHPA regardless of the public or private character of the property involved. Further, where it has been long established that the role of the district court in [Declaration of Taking Act] condemnations is limited to a bare consideration of the legal authority to take, and where the courts have been careful to refrain from considering matters of propriety, expediency and policy with regard to the use of the property sought, we conclude that only an express statement by Congress that NHPA noncompliance is a defense to a condemnation itself would be sufficient to achieve that result.

*Id.* 639 F.2d at 304. This reasoning is similarly applicable to a NEPA challenge.

The Herkes and the district court relied on *United States v. 18.2 Acres of Land,* 442 F.Supp. 800 (E.D.Cal.1977). In *18.2 Acres,* the district court held that NEPA was a proper defense to a condemnation action. "It is sufficient at this point to hold simply that the decision to condemn land for a public use, just like any other federal agency decision, is subject to the application of NEPA." *Id.* at 807. The decision noted and rejected the Eighth Circuit case, *United States v. 255.25 Acres of Land,* a Ninth Circuit case, *United States v. 80.5 Acres of Land,* 448 F.2d 980 (9th Cir.1971), and Supreme Court precedent. *See 18.2 Acres of Land,* 442 F.Supp. at 806–07. We do not approve of this approach.

 A federal court has jurisdiction to review only one aspect of condemnation actions: is the purpose for which the property was taken a Congressionally authorized public use?

> It is uncontroverted that the courts are not vested with authority judicially to review the power of Congress to authorize acquisition of land. Once an administrative agency designated by Congress has been delegated authority to take lands for a public use, the courts have no jurisdiction to review action of that administrative agency in its determination as to the parcels of land that are or are not necessary to the project. The necessity of taking or appropriating private property for public use is legislative in nature and one over which the courts lack jurisdiction.

*80.5 Acres of Land,* 448 F.2d at 983 (9th Cir.1971) (citations omitted).

NEPA cannot be used as a defense to the condemnation action. The filing of the condemnation action and the subsequent transfer of legal title are not "major Federal actions significantly affecting the environment." 42 U.S.C. § 4332(2)(C). Actions that fall under NEPA's umbrella may immediately follow a condemnation action; NEPA applies to newly acquired land in the same way it applies to land the government has long owned. In an appropriate action, the district court may enjoin the proposed road system.[1] The district court cannot, however, address the ownership of the land.

## III

We **REVERSE** the district court decision and direct the district court to reinstate title to the land in the federal government.

---

1. The Forest Service did not appeal the district court's holding that the 1986 EA and the 1989 Transportation Analysis did not comply with NEPA. At oral argument, the Forest Service conceded that it would be estopped in future litigation from asserting that these studies were adequate under NEPA. We shall hold the Forest Service to this statement. Of course, the Forest Service did not concede any part of its argument that under the Northwest Timber Compromise in the Department of the Interior and Related Agencies Appropriations Act of 1990, Pub.L. No. 101–121, 103 Stat. 701, 745 (1989), judicial review of the road system is completely barred. We do not consider that argument in this decision.